UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                                Case No. 3:23-cr-74-MCR-HTC

TAJ TARIQ TAMBOURA ROBINSON

_____/

ORDER OF DETENTION

On December 14, 2023, the Court held a hearing on the government's oral motion for detention pursuant to the Bail Reform Act of 1984, as amended, 18 U.S.C. § 3141, *et seq.* Based upon the information contained in the pretrial services report, the evidence presented at the hearing, and the arguments of counsel, the Court finds Defendant shall be detained pending trial because there are no conditions or combination of conditions which will reasonably assure Defendant will not be a risk of flight or a danger to the safety of the community if released.

I.   **The Bail Reform Act**

The Bail Reform Act of 1984 provides a framework for determining whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. Although under the Act only a limited group of offenders should be denied bail pending trial, *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007), the Act also reflects "the deep public concern ... about the growing problem of crimes committed by persons on release

and the recognition that there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community," *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985) (quotations omitted). "Congress has determined that [w]hen there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *Id.* (quotations omitted) (alteration in original).

A court may release a defendant pending trial on appropriate conditions, 18 U.S.C. § 3142(a)(2), or detain the defendant, *id.* § 3142(a)(4). *See Reno v. Koray*, 515 U.S. 50, 57 (1995). The court shall detain a defendant if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). A finding of risk of flight must be supported by a preponderance of the evidence, while a finding of danger must be supported by clear and convincing evidence. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

"Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423-25 (1979); *Colorado v. New Mexico*, 467

U.S. 310, 316 (1984) (clear and convincing evidence is evidence which induces "an abiding conviction that the truth of its factual contentions are 'highly probable'"). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *Chimurenga*, 760 F.2d at 405. Additionally, "danger to the community" does not refer to simply risk of physical violence; instead, it includes a danger that the defendant might engage in criminal activity that is a detriment to the community. *See United States v. Ingram*, 415 F. Supp. 3d 1072, 1077 (N.D. Fla. 2019) (collecting cases). Danger to the community, thus, includes "the harm to society caused by narcotic trafficking." *Id.*

Although the burden of proof generally falls on the government, when probable cause is established in certain cases, a rebuttable presumption of detention arises that no such conditions exist. 18 U.S.C. § 3142(e)(3). Those cases are identified in 3142(e)(3) and include an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* In a rebuttable presumption case, the defendant bears the burden of production – that is the burden of producing evidence to rebut the presumption. *See e.g., United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). While the burden is not a heavy one, even if it is met, the

presumption nonetheless remains a factor for the court to consider. *See United States v. Stricklin*, 932 F.2d 1354, 1355 (10th Cir. 1991).  Also, even in a rebuttable presumption case the burden of persuasion remains with the government. *See id.* at 1354-55; *Mercedes*, 254 F. 3d at 436.

This is a rebuttable presumption case because Defendant is charged with three felony drug offenses, each of which carry a maximum term of imprisonment of more than 10 years.[1]  "The rebuttable presumption in 18 U.S.C. § 3142(e) exists to advance Congress' belief that those charged with serious drug crimes are necessarily a danger to the community and should be detained to protect the public, absent a showing by the defendant that he is not a danger to the community." *United States v. Kidd*, 2013 WL 142317, at *3 (N.D. Ga. Jan. 11, 2013).

To determine whether a defendant should be released on conditions or detained, courts consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the person; (3) the history and characteristics of the

---

[1] Count One, which charges Defendant with conspiracy to distribute and possession with intent to distribute 5 kg or more of cocaine and 400 grams or more of a controlled substance containing fentanyl, methamphetamine and marijuana, carries a potential penalty of a mandatory minimum of 10 years' incarceration.  Count Two, which charges Defendant with possession with intent to distribute the controlled substances identified in Count One, carries the same mandatory minimum sentence.  Count Three, which charges Defendant with possession with intent to distribute 500 grams of cocaine, carries a potential penalty of a mandatory minimum of 5 years' incarceration.  Each of those charges carries a maximum period of incarceration of life.  Count 4 charges Defendant with conspiracy to commit money laundering, which carries a maximum penalty of 20 years of incarceration.

person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Although § 3142(g) identifies the factors the courts should consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). Instead, the weight given to each factor will inevitably vary from case to case and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. *United States v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022).

II.   Analysis

A. Nature and Circumstances of the Offense Charged.

When considering the nature and circumstances of the offense, the court considers "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1).

The possession, use, and distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population." *Treasury Employees v. Von Raab*, 489 U.S. 656, 668 (1989). Drug distribution causes "grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part). A "seller of addictive drugs may inflict greater bodily harm

upon members of society than the person who commits a single assault." *Rummel v. Estelle*, 445 U.S. 263, 296 n.12 (1980) (Powell, J., dissenting).

Here, as stated above, Defendant has been indicted by the grand jury for three drug offenses and one count of conspiracy to commit money laundering.  Doc. 1.  The amount of drugs alleged in the indictment is significant and includes more than 5 kilograms of cocaine, more than 400 grams of a substance containing fentanyl, methamphetamine, and marijuana.  *Id*.  Notably, the drugs at issue here involve one of the deadliest drugs on the streets right now – fentanyl.  According to the Centers for Disease Control and Prevention, fentanyl is up to 50 times stronger than heroin and 100 times stronger than morphine. https://www.cdc.gov/stopoverdose/fentanyl/index.html.  It is also a major contributor to fatal and nonfatal overdoses in the United States.  *Id*.  Moreover, the indictment alleges the conspiracy took place over a 5-year period.  *Id*.  Thus, the Court finds the nature and circumstances of the offenses charged weigh in favor of detention.

    B. <u>Weight of the Evidence</u>.

This factor requires the district court to consider evidence proffered by the government which it intends to use at Defendant's trial.  In considering the weight of the evidence, the court considers both the weight of the evidence of dangerousness and the government's underlying case against the defendant.  *United States v.*

*Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006). "While it is true that the Court's determination of this factor 'neither requires nor permits a pretrial determination of guilt,' the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight." *United States v. Slatten,* 286 F. Supp. 3d 61, 67–68 (D.D.C. 2017) (internal citations omitted), *aff'd,* 712 F. App'x 15 (D.C. Cir. 2018); *United States v. Pirk,* 220 F. Supp. 3d 402, 410 (W.D.N.Y. 2016).

The weight of the evidence is a common-sense consideration. For instance, if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate the defendant is a present danger to himself or the community if the government's allegations later prove to be true. Alternatively, if the only evidence against a defendant is circumstantial, contradicted, or unreliable, the defendant has less reason to duck court proceedings in the interest of proving his innocence and that evidence does not support viewing the defendant as a risk to the safety of the community. As such, the weight of the evidence against Defendant will be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate. *United States v. Blackson*, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023).

At the detention hearing, the government proffered a timeline of the government's investigation into the conspiracy, as it relates to Defendant, and also admitted documents to support some of the events discussed below:

- The government began its investigation into the conspiracy alleged in the indictment in 2019. In that year, Defendant's then paramour and mother of his child, C. Ross, was pulled over on Interstate I-10 in Louisiana as part of a routine traffic stop. After a probable cause search, officers found 36 bottles of promethazine in the car as well as 8 kilograms of cocaine in the tire wheel. The government has reason to believe Ross was transporting the controlled substances for Defendant. Gov't Exh. 6, are crime laboratory results confirming the controlled substances seized from Ross's vehicle.

- In June 2020, as part of the government's surveillance of property held in the name of Ross, located on Common Street, the government seized a backpack containing $72,000 which a source of information told law enforcement belonged to Defendant. Additional funds allegedly belonging to the Defendant were found by law enforcement at Freedom Storage, also in the amount of $72,000.

- The government obtained warrants to search 5 different locations on June 28, 2021, including the Common Street address and Defendant's then-residence in Atlanta. The government found some controlled substances, scales, blenders, cash and firearms during those searches, although nothing significant was located at

the Atlanta residence. For that reason, the government did not seek an indictment on Defendant at that time.

- On October 13, 2022, the United States Postal Service intercepted 2 packages shipped from Houston to Crestview. One package contained 1 kg of fentanyl and, the other, 1 kg of cocaine. Defendant's fingerprints were identified on the box containing fentanyl. Gov't Exh. 5 contains the lab results confirming the identity of those controlled substances, as well as the results of the fingerprint analysis that was performed on the packages.

- From October 2022-December 2022, the government intercepted calls between Defendant and his brother. A transcription of a few of those calls is contained in Gov't Exhs. 1-3. According to law enforcement, Defendant and his brother were discussing various drug transactions during those calls. For example, on October 11, 2022, Defendant and his brother were discussing a drug transaction involving 2 kg of cocaine and 10 kg of methamphetamine for $65,000. Later in the conversation, law enforcement believes Defendant told his brother that after he distributed the controlled substances he would make $350,000. The government believes the call also included a conversation about how the money would be concealed through the purchase of homes that would be flipped.

- In December 2022, law enforcement conducted a traffic stop on a vehicle in which Christopher Howard Hughes, a co-defendant in the indictment, was

traveling. During that stop, law enforcement seized 505 grams of cocaine and 2 cases of promethazine. Intercepted calls between Hughes and Defendant show that after Hughes was released, Defendant asked Hughes whether any "clean," meaning cocaine, had been found.

- Defendant was arrested on December 11, 2023, and after being Mirandized, told law enforcement he does not sell drugs. Rather, he "lines people up an[d] robs them"; that he "ain't paid no taxes for all my hustle," and that he "sell[s] cars, middleman house" and "sell[s] women." *See* Gov't Exh. 4.

- The government believes based on their investigation that Defendant resides in "source" locations, namely Houston and Atlanta, and then brings the controlled substances back to the Northern District of Florida for distribution.

While the Court understands these exhibits and the government's proffers may not be admissible at trial, they are evidence the Court can consider for purposes of detention. Moreover, the Defendant does not dispute the transcriptions are verbatim of the recordings (which would be admissible at trial) or that he made the statements noted by law enforcement during his arrest.

The Court finds the weight of the evidence to be substantial and to weigh in favor of detention.

C. <u>The History and Characteristics of the Defendant</u>.

In considering the history and characteristics of a defendant, the court considers such matters as the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g).

Defendant is 34 years old and claims to have lived in Pensacola with his mother for the past 3 years. Defendant got his GED while in juvenile detention and, despite his current age, reported to the Probation Office that he has never had a "legitimate job." Defendant's criminal history starts at the age of 13, and consists of regular criminal convictions, including four drug charges for possession of not more than 20 grams of marijuana, one violation of probation for committing a new law violation and leaving a restricted area, several fleeing and eluding and resisting arrest convictions, and a felony failure to appear. While the Court recognizes, as Defendant points out, that these charges are from 2011 or prior, the Court notes the bond report also identifies a more recent conviction for a narcotic equipment possession or use in 2018, and an unknown evading arrest charge from 2023 in Texas. Also, while denying having a substance abuse problem, Defendant admitted to having used marijuana and opioids occasionally, including at the time of his arrest.

The Defendant called his mother, N. Robinson, to testify as a witness. Defendant had initially given Ms. Robinson's name to the Probation Officer for purposes of providing an independent source to verify the information Defendant provided. However, while the Probation Officer wrote in the report that she was unable to reach Ms. Robinson after numerous attempts, Ms. Robinson testified she only had one missed call from a Pensacola number she did not recognize and no one left her a message. Ms. Robinson also testified that she works as an LPN, working shifts sometimes lasting up to 16 hours, and that Defendant could reside with her if he is released.

Upon cross-examination by the government, Ms. Robinson admitted her home had been searched by officers and could not dispute that distribution amounts of marijuana were found. Ms. Robinson also did not necessarily dispute that the government has intercepted calls between Ms. Robinson and her son in which she advised him how to avoid law enforcement detection. Finally, given the hours that Ms. Robinson works as well as her lack of knowledge regarding Defendant's activities, including whether he has other residences, the Court does not find the Defendant's release plan offers much in the way of mitigating the Court's concerns

about whether Defendant will continue to engage in drug trafficking activity or leave the District.[2]

Certainly, the Court recognizes (as the government also acknowledged), Defendant's criminal history is not as serious or significant as ones the Court generally sees in these types of cases. Indeed, it appears the longest sentence Defendant received for any of his convictions was for 11 months and 29 days. The Court also recognizes that none of the convictions involved violent crimes *per se*. However, it cannot be disputed drug dealing is "a violence-prone business." *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *see United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting "the illegal drug industry is, to put it mildly, a dangerous, violent business"). "[A]n indictment for a drug trafficking offense is strong evidence that the defendant is a risk to the community." *United States v. Allen*, 891 F. Supp. 594, 599 (S.D. Fla. 1995). Indeed, studies "demonstrate a direct nexus between illegal drugs and crimes of violence." *Harmelin*, 501 U.S. at 1003, 111 (Kennedy, J., concurring).

---

[2] Also, according to the government's proffer, one of the intercepted calls from May 2021, between Defendant and his brother occurred while Defendant was at Ms. Robinson's residence, after Defendant flew to PNS from TX. According to the government, during this call the brothers discussed a drug transaction involving cocaine.

Undoubtedly "society is endangered when courts release those individuals into the community whose past conduct indicates that they are likely to possess, control or distribute controlled substances." *United States v. Anderson*, 670 F.2d 328, 330-31 (D.C. Cir. 1982). "[D]rug offenders pose a special risk of flight and dangerousness to society." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *see also United States v. Roberts,* 2022 WL 11455294, at *4 (M.D. Ala. Oct. 19, 2022) ("The fact that Roberts has not been charged with any crimes of violence or possession of firearms does not mitigate the danger Roberts presents by his pattern of continued involvement in drug trafficking, which constitutes a danger to others and the community.").

The Court finds the government has presented clear and convincing evidence Defendant is a danger to the community.

D. <u>The Nature and Seriousness of the Danger Posed by Release</u>.

The Court finds there is a serious danger that, if released, Defendant will return to drug trafficking to support himself. *See United States v.* Martin, 2017 WL 4080689, at *3 (S.D. Ga. Sept. 14, 2017) ("Congress has recognized that those in the drug 'business'—entrepreneurs like this defendant—'pose a significant risk of pretrial recidivism.'"). The risk a defendant will continue to engage in drug trafficking constitutes a danger to the safety of the community. *King*, 849 F.2d at 487, n.2.

In determining whether detention is necessary, a court "makes a judgment about the persuasiveness of the evidence offered by each party[.]" *United States v. Clum*, 492 F. App'x 81, 85 (11th Cir. 2012) (citation omitted). While Defendant argues there are conditions which can be imposed, such as GPS monitoring, "there is virtually nothing that any person could do to prevent Defendant from engaging in drug trafficking if that is what []he set [his] mind to doing. It is not only possible for Defendant to continue to engage in the continued sale of narcotics from [his] home, it also is very probable." *United States v. Carter*, 2015 WL 541554, at *4 (M.D. Ga. Feb. 10, 2015); *see also United States v. Williams*, 2016 WL 2770883, at *3 (S.D. Ala. May 13, 2016) ("While defense counsel argued that electronic monitoring would adequately address the danger issue, the undersigned finds that such would not prevent Defendant's involvement with criminal activity if he were so inclined.").

GPS monitoring would also not keep Defendant from fleeing to another district.[3] Motivated persons are certainly known to cut off their monitors. *See United States v. Benevolence Int'l Found., Inc.*, 222 F. Supp. 2d 1005, 1007, (N.D. Ill. 2002) (noting that neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant

---

[3] Defendant argues he does not have the financial ability to flee. However, his real financial situation is unknown since he admits to having failed to report any income and the government believes more than $140,000 of seized funds belonged to Defendant.

releasee). And given the mandatory 10 year sentences that Defendant is facing, combined with the amount of drugs being attributed to him, Defendant has a strong motive to flee. *United States v. Iverson,* 2014 WL 5819815, at *4 (W.D.N.Y. Nov. 10, 2014) (Arcara, J.) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long ... a defendant has stronger motives to flee.") (internal citation omitted); *see e.g., United States v. Bruno*, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015); *United States v. English*, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant faced a presumption against release and a mandatory sentence that incentivized fleeing); *United States v. Dodge*, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Thus, based on the evidence proffered by the government, the Court finds Defendant has not overcome the presumption that no condition or combination of conditions will reasonably assure Defendant will not pose a danger to the community.

Accordingly, the Court **ORDERS** that Defendant be held in the custody of the Attorney General or his designated representative pending trial in this matter. The Attorney General or his designated representative shall, to the extent practicable, confine Defendant separate from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable

opportunity to consult with counsel in private while in custody.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED this 14th day of December, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**